ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
## For The District of Columbia Circuit


KATHERINE DANIELA PACHECO QUIROS, ET AL.,

*Plaintiff - Appellant*

v.

MOLLY AMADOR, DEPUTY CONSUL GENERAL AND VISA UNIT CHIEF U.S. EMBASSY IN COSTA RICA, ET AL.,

*Defendant - Appellee*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

───────────

### APPEALLANT'S REPLY BRIEF

───────────

Michael E. Piston
(DC Circuit Bar 63186)
38-08 Union Street, Ste 9A
Flushing, NY 11354
646-845-9895
michaelpiston4@gmail.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................iv

ARGUMENT..................................................................1

    I.     5 USC 555(b) places a clear, non-discretionary duty on a consular officer to conclude an immigrant visa application brought to it in reasonable time.......................................................1

    II.    The consular nonreviewability doctrine does not bar Ms. Karimova's claims....................................................................4

A. *Baan Rao* plays no role in this issue...............................................4

B. Neither does *Saavedra Bruno*.........................................................8

C. The only case supporting the government is premised upon a misreading of authority...................................................................10

D. The presumption of reviewability requires judicial review where, as here, there is no express law prohibiting .............................................11

    III.   The government has failed to establish that the district court's decision should be upheld...................................................12

        A.     The district court acted prematurely...............................20

        B.     The district court failed to properly consider all the allegations in the amended complaint and grant the appropriate inferences to Ms. Karimova.........................................…....28

        C.     The district court improperly relied upon facts not in the pleadings....................................................................29

        D.     The district court did not properly consider the TRAC factors in determining that Ms. Karimova has not suffered an unreasonable delay....................................…..................29

CONCLUSION......................................................................30

CERTIFICATE OF COMPLIANCE.....................................................31

CERTIFICATE OF SERVICE.........................................................32

**TABLE OF AUTHORITIES**

**United States Code**

5 U.S.C. § 555(b)...............................................................1,2,3,12

8 U.S.C. §§ 1104(a)...............................................................8,9

8 U.S.C. §§ 1182(a)(28) (repealed)...................................................11

8 U.S.C. § 1201(a)...............................................................8

8 U.S.C. § 1201(g)...............................................................3,11

**Legislative History**

Administrative Procedure Act, Legislative History  (1946) (House

Report).............................................................................12

**Federal Cases**

*Abbott Lab'ies v. Gardner*, 387 U.S. 136 (1967).....................................12

*Akhmetshin v. Browder*, 993 F.3d 922, 955 n.3 (D.C. Cir. 2021)...............23

*Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617

F.Supp.3d (D.D.C. July 27, 2022)................................................4,6,15

*Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020  (D.C. Cir.

2021).............................................................................4,5,7,8

*Califano v. Sanders*, 430 U.S. 99 (1977)............................................12

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)...................7

*Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1 (D.D.C.

2022).............................................................................26,27

iv

*Egypt DOD v. Alboghdady*, 2022 U.S. Dist. LEXIS 42876 (D.C.D)...........15

United States v. Emor, 785 F.3d 671 (D.C. Cir. 2015)....................…......................................14

*Garner v. Louisiana*, 368 U.S. 157 (1961)…………………………………......16

*Gonzalez v. Cissna*, 364 F. Supp. 3d 579 (EDNC, 2019).........................21

*Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2020)...........20,21,23,24,26

*Hayes v. Bordenkircher*, 621 F.2d 846 (6th Cir. 1980)............................16

*Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21-cv-38 (MKV), 2021 U.S. Dist. LEXIS 27205, 2021 WL 535485 (S.D.N.Y....14

*Wan Shih Hsieh v. Kiley*, 569 F.2d 1179 (2d Cir. 1978)....................10,11

*Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023).......................26

*In re Core Commc'ns, Inc.*, 531 F.3d 849  (D.C. Cir. 2008)......................23

*In re UMW Int'l Union*, 190 F.3d 545 (D.C. Cir, 1999).........................25

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)…………………………......10,11

*Krihely v. Mayorkas*, 2023 U.S. Dist. LEXIS 169830, 2023 WL 6215360..25

*Martinez v. Dart Trans, Inc.*, 547 F. Supp. 3d 1153 (D.N.M. 2021)...........14

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003)........................................................................1,2,13

*Mason v. Shinseki*, 2013 U.S. App. Vet. Claims LEXIS 239....................26

*McGhee v. Marshall*, 843 Fed. Appx. 815 (7th Cir. 2021).........................15

*Meyou v. United States Dep't of State*, 2022 U.S. Dist. LEXIS 88737,  2022 WL 1556344 (D.D.C.).........................................................................1,2

*Moore v. Missouri*, 159 U.S. 673 ))(1895)…………………………………16

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.C.D. 2016).............2,5

*Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997)...........................................6

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011)..........17

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999)...........5,8,9,10

*Sanchez v. Garland*, 2023 U.S. App. LEXIS 16624 (9th Cir.)...................15

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)...............................................17

*Telecommunications Research & Action Center v. FCC* (TRAC) 750 F.2d 70 (D.C. Cir. 1984)..................................13,21,23,24,25,27,28,30

*Telles v. Mayorkas*, No. 21-395, 2022 U.S. Dist. LEXIS 123319, 2022 WL 2713349.............................................................................25

*Thakker v. Renaud*, 2021 U.S. Dist. LEXIS 53326, 2021 WL 1092269 (D.C.D.)..............................................................................25

*The Chinese Exclusion Case*, 130 U.S. 581 (1889)..................................9

*United States v. Emor*, 785 F.3d 671 (D.C. Cir. 2015)............................14

*United States v. Groner*, 475 F.2d 550 (5th Cir. 1972)...........................18

*United States v. Philip Morris USA Inc.*, 396 F.3d 1190 (D.C. Cir.)...........6

*United States v. Sheffield*, 832 F.3d 296 (D.C. Cir. 2016)........................7

*Uranga v. United States Citizenship & Immigration Servs.*, 490 F. Supp. 3d 86 (2020)...............................................................................25

*Vulupala v. Barr*, 438 F. Supp. 3d 93 (D.C.D. 2020)...............................2

TREATISES

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016)...................7

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................iv

ARGUMENT.................................................................................1

    I.     5 USC 555(b) places  a clear, non-discretionary duty on a consular officer to conclude an immigrant visa application brought to it in reasonable time...................................................................1

    II.    The consular nonreviewability doctrine does not bar Ms. Karimova's claims....................................................................4

A. *Baan Rao* plays no role in this issue.................................................4

B. Neither does *Saavedra Bruno*.........................................................8

C. The only case supporting the government is premised upon a misreading of authority..................................................................10

D. The presumption of reviewability requires judicial review where, as here, there is no express law prohibiting ………………………..……..11

    III.   The government has failed to establish that the district court's decision should be upheld....................................................12

        A.     The district court acted prematurely..............................20

        B.    The district court failed to properly consider all the allegations in the amended complaint and grant the appropriate inferences to Ms. Karimova.........................................…..28

        C.    The district court  improperly relied upon facts not in the pleadings..................................................................29

        D.    The district court did not properly consider the TRAC factors in determining that Ms. Karimova has not suffered an unreasonable delay.....................................…...................29

CONCLUSION.......................................................................30

CERTIFICATE OF COMPLIANCE..................................................31

CERTIFICATE OF SERVICE.............................................................32

# TABLE OF AUTHORITIES

## United States Code

5 U.S.C. § 555(b)……………………………………………………..1,2,3,12

8 U.S.C. §§ 1104(a)……………………………………………………...8,9

8 U.S.C. §§ 1182(a)(28) (repealed)…………………………………….11

8 U.S.C. § 1201(a)………………………………………………………..8

8 U.S.C. § 1201(g)…………………..…………………………..…………..3,11

## Legislative History

Administrative Procedure Act, Legislative History  (1946) (House

Report)………………………………………………………………….12

## Federal Cases

*Abbott Lab'ies v. Gardner*, 387 U.S. 136 (1967)……………………………12

*Akhmetshin v. Browder*, 993 F.3d 922, 955 n.3 (D.C. Cir. 2021)…………..23

*Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617

F.Supp.3d (D.D.C. July 27, 2022)…………………………………….....4,6,15

*Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020  (D.C. Cir.

2021)…………………………………………………………………...4,5,7,8

*Califano v. Sanders*, 430 U.S. 99 (1977)……………………………………12

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)………………7

*Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1 (D.D.C.

2022)………………………………………………………………….26,27

*Egypt DOD v. Alboghdady*, 2022 U.S. Dist. LEXIS 42876 (D.C.D)...........15

United States v. Emor, 785 F.3d 671 (D.C. Cir. 2015).................…...................................14

*Garner v. Louisiana*, 368 U.S. 157 (1961)...........................................16

*Gonzalez v. Cissna*, 364 F. Supp. 3d 579 (EDNC, 2019)........................21

*Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2020)...........20,21,23,24,26

*Hayes v. Bordenkircher*, 621 F.2d 846 (6th Cir. 1980)............................16

*Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21-cv-38 (MKV), 2021 U.S. Dist. LEXIS 27205, 2021 WL 535485 (S.D.N.Y....14

*Wan Shih Hsieh v. Kiley*, 569 F.2d 1179 (2d Cir. 1978)...................10,11

*Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023).......................26

*In re Core Commc'ns, Inc.*, 531 F.3d 849 (D.C. Cir. 2008).....................23

*In re UMW Int'l Union*, 190 F.3d 545 (D.C. Cir, 1999).........................25

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)....................................10,11

*Krihely v. Mayorkas*, 2023 U.S. Dist. LEXIS 169830, 2023 WL 6215360..25

*Martinez v. Dart Trans, Inc.*, 547 F. Supp. 3d 1153 (D.N.M. 2021)...........14

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003)....................................................................1,2,13

*Mason v. Shinseki*, 2013 U.S. App. Vet. Claims LEXIS 239....................26

*McGhee v. Marshall*, 843 Fed. Appx. 815 (7th Cir. 2021)........................15

*Meyou v. United States Dep't of State*, 2022 U.S. Dist. LEXIS 88737, 2022 WL 1556344 (D.D.C.)..................................................................1,2

*Moore v. Missouri*, 159 U.S. 673 ))(1895)..............................................16

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.C.D. 2016)………….2,5

*Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997)……………………………………..6

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011)……….17

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999)………..5,8,9,10

*Sanchez v. Garland*, 2023 U.S. App. LEXIS 16624 (9th Cir.)………………15

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)……………………………………..17

*Telecommunications Research & Action Center v. FCC* (TRAC) 750 F.2d 70 (D.C. Cir. 1984)…………………………………….......13,21,23,24,25,27,28,30

*Telles v. Mayorkas*, No. 21-395, 2022 U.S. Dist. LEXIS 123319, 2022 WL 2713349…………………………………………………………………….25

*Thakker v. Renaud*, 2021 U.S. Dist. LEXIS 53326, 2021 WL 1092269 (D.C.D.)……………………………………………………………………...25

*The Chinese Exclusion Case*, 130 U.S. 581 (1889)…………………………..9

*United States v. Emor*, 785 F.3d 671 (D.C. Cir. 2015)……………………….14

*United States v. Groner*, 475 F.2d 550 (5th Cir. 1972)……………………….18

*United States v. Philip Morris USA Inc.*, 396 F.3d 1190 (D.C. Cir.)………..6

*United States v. Sheffield*, 832 F.3d 296 (D.C. Cir. 2016)……………………7

*Uranga v. United States Citizenship & Immigration Servs.*, 490 F. Supp. 3d 86 (2020)……………………………………………………………………25

*Vulupala v. Barr*, 438 F. Supp. 3d 93 (D.C.D. 2020)…………………………..2

TREATISES

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016)……………..7

# ARGUMENT

I.  **5 USC 555(b) places a clear, non-discretionary duty on a consular officer to conclude an immigrant visa application brought to it in reasonable time**

The government claims that the Court lacks jurisdiction over this action because a consular officer has no clear, non-discretionary duty to re-adjudicate a "refused" visa application. Appellees' Br. at 12-20. However, "[t]he APA 'imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it '"within a reasonable time."'" *Meyou v. United States Dep't of State*, 2022 U.S. Dist. LEXIS 88737, *7, 2022 WL 1556344 (D.D.C.), quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003), quoting 5 U.S.C. § 555(b). And while the government goes on to claim that "general statutes governing good government such as 5 U.S.C. § 555(b) impose no such clear duty", Appellees' Br. at 16, it cites no authority for this assertion. In fact, § 555(b) is precisely the sole basis upon which this Court found such a nondiscretionary duty to exist in *Mashpee*.

In *Mashpee*, "[t]he Secretary argues that because the BIA did not in its regulations impose upon itself a 'mandatory, nondiscretionary duty to begin to consider the Mashpee petition' by a time certain, the district court

1

'lacked jurisdiction to exercise mandamus to compel Interior to place the Mashpee petition on active consideration.'". *Id.* at 1099. The Court directly rejected this argument because "Mashpee's claim arose under the Administrative Procedure Act, which imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time', 5 U.S.C. § 555(b)." *Id.*

The fact that this Court did not find any other basis upon which the Secretary had a mandatory, nondiscretionary duty to begin to consider the *Mashpee* petition by a time certain, establishes that none other was needed. If § 555(b) imposed a mandatory non-discretionary duty upon the agency in *Mashpee*, there is no reason why it would not also impose such a duty upon the consul in the processing of visas, the government offers none, and in fact numerous courts of this district have so held. See, e.g., *Meyou,* 2022 U.S. Dist. LEXIS 88737 at *7, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100-101 (D.C.D. 2020); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 282 (D.C.D. 2016). In contrast, the government cannot cite a single case, in district or out, rejecting this conclusion.

Since, as the government itself emphasizes, finding such a duty is a mandatory prerequisite for finding jurisdiction in cases charging unreasonable delay, Appellees' Br. at 139, which naturally would include

*Mashpee*, *id.* at 1099, therefore this holding is not dicta but in fact binding precedent.

Finally, it is telling, although not surprising, that although the government goes to some lengths to show how the consul's "refusal" under 8 U.S.C. § 1201(g) complies with various provisions of law other than § 555(b), Appellees' Br. at 18-20, it doesn't even claim it complies with § 555(b) itself. The government properly declines to assert that a consul had "conclude[d] a matter presented", to her, *id.*, when the visa applicant was told, after the purported refusal, that "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete", "that her application 'is pending the completing of administration processing in order to verify qualifications for this visa' and that [a] decision on this cannot be made until the Consular Section finishes its review.'" Mem. at 3, JA103. Therefore it is undisputed that the consul has not even arguably complied with § 555(b).

II.   the consular nonreviewability doctrine does not bar Ms. Karimova's claims.

**A.** *Baan Rao* plays no role in this issue.

The government relies heavily upon the word "withhold" in *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), to argue that a

consular officer's failure to bring a visa application to a conclusion is protected from judicial review by the doctrine of consular nonreviewability. However, the Court's use of this single word in a decision which was fundamentally unrelated to the issues before this Court and which were neither argued nor decided in *Baan Rao*, is not merely *dicta*, but in fact irrelevant.

*Baan Rao* involved an action under the Administrative Procedure Act to seek judicial review of a final decision on the merits by a United States consular official to "den[y]", *id.* at 1023, an E-2 visa to two Thai nationals. There was no dispute that a visa decision had in fact occurred and nowhere did the appellants ask the court to order the consular officer to make a decision but, rather, sought judicial review of the decisions that were made.

Nevertheless, "Defendants seize on the D.C. Circuit's use of the word 'withhold.'", *Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.*, Civil Action No. 21-1521 (RDM), 2022 U.S. Dist. LEXIS 133589, at *24, 617 F.Supp.3d 1, 2022 WL 2966333 (D.D.C. July 27, 2022), to attempt to extend *Baan Rao* to an issue neither before nor considered by this Court. The Defendants effectively argue that any failure by a consular officer to issue a visa to an applicant amounts to a decision to "withhold" the visa

and therefore is unreviewable. This very strained reading is  neither controlling, or even relevant here for at least five reasons.

First, this language is "unpersuasive given our Court of Appeals' characterization of the doctrine as applicable to 'a consular official's decision to issue or withhold a visa' rather than the failure to make a decision at all. *Saavedra Bruno*, 197 F. 3d at 1159 (emphasis added)." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 291 n.21 (D.D.C. 2016) (emphasis included). The Defendants do not acknowledge, much less rebut, *Nine Iraqi Allies'* refutation of their interpretation of the language of *Saavedra Bruno,* which is merely repeated in *Baan Rao.*

Second, it is unreasonable to suppose that this Court intended its use of the word "withhold" in *Baan Rao* to bar actions to compel decisions by consular officers on visa applications. Not only is it highly unlikely that the Court would have simply overruled numerous decisions from this circuit and elsewhere without so much as alluding to them, even indirectly, *See Al-Gharawy* , 2022 U.S. Dist. LEXIS 133589, at *25, the idea that it would create a circuit split without even referring to it strains credulity.[1] See *United States v. Philip Morris USA Inc.*, 364 U.S. App. D.C. 454, 396 F.3d

---

[1] "In opinions addressing a matter of first impression in a circuit, the court will ordinarily set forth the relevant law in the other circuits." Garner, at 512.

1190, 1201 (D.C. Cir.) ("[W]e avoid creating circuit splits when possible . . . ."), *cert. denied*, 546 U.S. 960 (2005).

Here the 9th Circuit has held that " we find that the consulate had a duty to act and that to date, eight years after application of the visas, the consulate has failed to act in accordance with that duty and the writ (of mandamus) should issue." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997) (Parenthetical material added). It would create a circuit split in light of *Patel* if this Court held that the courts have no authority to compel a consulate to decide a visa application on the theory that its failure to make a final decision amounted to a non-reviewable decision to "withhold" a visa.

Third, such a holding, even if intended, would be dicta. *See  Al-Gharawy ,* 617 F. Supp. 3d 1, 15 (D.C.D. 2022). As noted, there was no claim in *Baan Rao* that the consulate unreasonably delayed a decision on the visa applications and no request that the court order it to decide them. Indeed, the Court itself characterized the decisions it was reviewing as "denied" visa applications, not decisions to "withhold" them. *Id*. at 1023, Reading the reference to the word "withhold" as invited by the Defendants to include cases in which a consular officer has not made a final decision to deny or grant a visa would not be necessary to support the decision reached by the Court of Appeals in *Baan Rao* and therefore would be *dicta.*

Fourth, even if not dicta, the Defendants' claimed reading of the word

"withhold" in *Baan Rao* is not precedent because the issue of whether a

court can order a consular official to decide a case which has been

nominally, but not finally, refused, was never addressed in that decision.

"Questions which merely lurk in the record, neither brought to the

attention of the court nor ruled upon, are not to be considered as having

been so decided as to constitute precedents." *United States v. Sheffield*, 832

F.3d 296, 308 n.3 (D.C. Cir. 2016) (quoting *Cooper Indus., Inc. v. Aviall

Servs., Inc.*, 543 U.S. 157, 170 (2004) (internal citation omitted)); Bryan A.

Garner et al., *The Law of Judicial Precedent* 44 (2016) (cases are only

"precedent" for "legal questions actually presented to and decided by the

court").

Finally, as noted above, both *Saavedra Bruno* and *Baan Rao*'s use of

the word "withhold" is irrelevant to the instant controversy because in both

instances the Court of Appeals was referring to a consular officer's decision

to issue or withhold a visa rather than a failure to make a decision at all.

Accordingly, *Baan Rao* should play no role in this Court's decision

here.

D. Neither does *Saavedra Bruno*

The government also discusses *Saavedra Bruno v. Albright*, 197 F.3d

1153 (D.C. Cir. 1999, in arguing that consular nonreviewability bars

review here However, *Saavedra Bruno* is premised upon the fact that "[t]he INA confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations. *See* 8 U.S.C. §§ 1104(a), 1201(a)." *Saavedra Bruno*, 197 F.3d at 1156. That section provides in relevant part that "[t]he Secretary of State shall be charged with the administration and the enforcement of the provisions of this Act and all other immigration and nationality laws relating to (1) the powers, duties and functions of diplomatic and consular officers of the United States, except those powers, duties and functions conferred upon the consular officers relating to the granting or refusal of visas;".

Although the government emphasizes its claim that Ms. Karimova's visa has been nominally "refused" under INA § 221(g), 8 U.S.C. § 1201(g), that is not the issue in this case. Rather, the issue is whether Ms. Karimova's visa application has been *brought to a conclusion* within a reasonable time. Since, as noted above, the government doesn't even claim it has, §1104, and, so, *Saavedra Bruno*, has no relevance to this matter.

However, there are further reasons for disregarding *Saavedra Bruno* here. It also relied heavily upon the historical nature of the consular nonreviewability doctrine, observing that:

> For more than a century, the Supreme Court has thus recognized the power to exclude aliens as " 'inherent in sovereignty, necessary for maintaining normal international relations and defending the

country against foreign encroachments and dangers--a power to be exercised exclusively by the political branches of government'" **7** and not "granted away or restrained on behalf of anyone." *The Chinese Exclusion Case*, 130 U.S. 581, 609, 32 L. Ed. 1068, 9 S. Ct. 623 (1889).

*Saavedra Bruno*, 197 F.3d at 1159.

But the Supreme Court has not recognized the right of a consular officer to fail to bring a visa application to a conclusion  for more than a century or, in fact, at all. Nor can the government suggest why not requiring consular officers to actually do their job, and make a final decision on a visa application, is 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers". After all, if any of those interests are endangered, the consular officer can simply (finally) refuse the visa, and so bring the matter to a conclusion. Therefore, neither the historical context nor the policy concerns which drove *Saavedra Bruno* have any relevance here.

C. The only case supporting the government is premised upon a misreading of authority.

*Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) is the only case cited by the government that actually involved a holding that a consul's refusal to bring a matter to a conclusion was barred by the doctrine of consular nonreviewability. All of the remaining cases it cites

involve review of an actual final decision by a consulate, not a failure to bring a matter to a conclusion.

In *Hsieh*, the court did decide that it had no jurisdiction to order a consul to make a decision on the visa applications of the plaintiff's children, action on which had been suspended pending the outcome of an Immigration and Naturalization Service (INS) investigation. The court held it did not because of the Supreme Court's statement in *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972), that:

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention,   is settled by our previous adjudications.

But once again, it is plain that the Supreme Court was not referring to the question of whether it could order a consul to bring a visa application to a final conclusion. There **was** a final conclusion in *Mandel*, and that final conclusion was "No", not under § 1201(g), but rather 8 U.S.C. § 1182(a)(28) (now repealed) rendering inadmissible, among other noncitizens, the advocates of world communism, such as Mandel.

Further, neither the power of Congress to exclude aliens altogether from the United States, nor to prescribe the terms and conditions upon which they may come to this country, is in any way affected by a court order requiring a consul to make a decision on a visa application. Therefore *Hsieh*, which is the only case cited by the government which actually held

that a federal court does not have jurisdiction to order a final decision on a

visa application, was premised upon a misreading of authority, none of

which supported its decision.

D. The presumption of reviewability requires judicial review where, as
here, there is no express law prohibiting it.

*Abbott Lab'ies v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated in*

*part on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977) held

that a statute will not be read to cut off judicial review otherwise available

under the APA "unless there is persuasive reason to believe that such was

the purpose of Congress." *Id*. As the APA's legislative history explained:

"[t]o preclude judicial review under this bill a statute, if not specific in

withholding such review, must upon its face give clear and convincing

evidence of an intent to withhold it." *Id*. at 140 n.2 (quoting Staff of Senate

Comm. on the Judiciary, 79th Cong.. 2d Sess., Administrative Procedure

Act Legislative History 275 (1946) (House Report), available at

https://books.google.com/books?id=ycgh_K_0iAEC&printsec=frontcover.

Otherwise, "[t]he statutes of Congress [would be] merely advisory."

Administrative Procedure Act Legislative History, *supra*, at 275.

Accordingly, if there is any ambiguity about the inapplicability of the

consular nonreviewability doctrine to actions to compel compliance with §

555(b), which in fact there isn't, it must bow to the very strong

presumption of judicial review.

III.    The government has failed to establish that the district court's
        decision should be upheld

The government claims that "the district court properly dismissed Ms. Karimova's claim for unreasonable delay after consideration of the Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D. C. Cir. 1984) (*TRAC)* factors. Mem. at 10-14, JA100-104. A review of the *TRAC* factors shows that Ms. Karimova has not sufficiently pled a case for unreasonable delay. First, the length of time Ms. Karimova has been waiting for further agency action is not unreasonable. Numerous courts have held that a delay of three to four years, in the abstract, is not unreasonable. *Id.* at 11-12, JA   ." Appellee Br. at 27-28.

However, "[w]hether a delay is unreasonable 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part… upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency', *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)", Mem. at 10, JA100. Nevertheless, the court below did exactly that. It determined that the delay in Ms. Karimova's case was not unreasonable, in the abstract, by reference to some number of years (apparently five, Mem. at 12, JA102) before which agency action will be (apparently conclusively) presumed lawful, without any consideration of

12

the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency. Therefore the finding that the delay in Ms. Karimova's visa processing was not unreasonable was contrary to the binding precedent of this Court.

The government goes on to claim that "[t]he fact that Ms. Karimova's interview took place in January 2020, two months before the COVID-19 pandemic, further shows the reasonableness of the delay. *Id.* at 12, JA    ." Appellee Br. at 28. This shows no such thing and in fact there is no allegations in Ms. Karimova complaint that Covid 19 had any affect upon the processing of her application[2]. *See  Emor*, 785 F.3d at 677 ( factual allegations outside the pleadings may not be considered when deciding a 12(b)(6) motion).

In any event, the courts have repeatedly rejected the idea that merely invoking the Covid 19 pandemic, with nothing more, can excuse otherwise unexplained delays. *See, e.g. Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21-cv-38 (MKV), 2021 U.S. Dist. LEXIS 27205, 2021 WL 535485, at *6-*7 (S.D.N.Y. Feb. 12, 2021, *Martinez v. Dart Trans, Inc.*, 547 F. Supp. 3d 1153, 1184 (D.N.M. 2021), *Egypt DOD v. Alboghdady*, 2022 U.S. Dist. LEXIS 42876, *27 (D.C.D. 2022), *Sanchez v. Garland*, 2023

---

[2] The mere fact that Ms. Karimova's complaint acknowledges that there was a "pandemic", Am. Compl. at ¶ 40, JA__, does not constitute an admission that it had any affect upon the processing of her visa application.

U.S. App. LEXIS 16624, *3 (9th Cir. 2023), *McGhee v. Marshall*, 843 Fed. Appx. 815, 817 (7th Cir. 2021).

This reasoning has been extended to complaints challenging unreasonable visa delays. *See Al-Gharawy*, where the court held that even though "the COVID-19 pandemic, which, according to the [Baghdad Embassy's] site, 'continues to severely affect the ability of embassies and consulates around the world to be able to resume routine visa services'", *Id.* at 18, nevertheless the argument that the delay is reasonable is "better suited for summary judgment, as Defendants must supply the Court with a record concerning the circumstances of Plaintiffs' visa adjudication and the conditions at the U.S. Embassy in Baghdad before the Court can gauge the reasonableness of Defendants' delay". *Id.* at 17. Here, as in *Al-Gharawy*, the consul has not provided sufficient, or in fact, any, information to permit the Court to understand how pandemic conditions affect services at the Embassy at Tbilsi specifically. [3] Indeed, it hasn't even claimed that it has had any affect at all.

The government nevertheless has suggested that where, as here, no allegations in the pleadings or even evidence in the record support the lower

_____

[3] In any event, the federal COVID-19 Public Health Emergency. declaration ended on May 11, 2023. https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html.

court's findings, it may be based solely on judicial notice. However, at no time did the lower court state that it was taking judicial notice of anything. Therefore this Court should not assume that it did. *Hayes v. Bordenkircher*, 621 F.2d 846, 848 (6th Cir. 1980) ("It is not outside the realm of speculation that the Supreme Court took judicial notice of this interpretation in finding the old version of the Texas recidivist statute constitutional. However, since this was not stated in the *Spencer v. Texas* decision, we reject this contention. *See Moore v. Missouri*, 159 U.S. 673, (1895).").

But even if it were to be inferred that the district court was taking judicial notice of the impact of Covid-19 on visa processing times at the Embassy in Georgia, it was improper to do so because it unfairly deprived Ms. Karimova of the opportunity to dispute the same. *Garner v. Louisiana*, 368 U.S. 157, 173 (1961) ("The judge must make clear during the course of the proceeding, and not after the evidence is closed, what matters are being judicially noticed."), *Scheuer v. Rhodes,* 416 U.S. 232, 249-250 (1974) (reversing a dismissal in part because no opportunity afforded petitioners to contest the facts of which the lower court took judicial notice), *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011).

In particular, any purported judicial notice of the impact of Covid 19 on processing times in Tbilisi deprived Ms. Karimova of the opportunity to

take discovery to determine to what extent, if any, Covid-19 actually affected the processing of her application. If this Court does not reject the lower court's holding on this subject altogether, it should remand this matter to that court to give the parties a reasonable opportunity to take discovery of whether Covid-19 actually impacted on Ms. Karimova's visa processing times.

Further, the court below did not claim that the "fact" that many others face similarly difficult circumstances to Ms. Karimova as they await adjudication of their visa applications is not subject to reasonable dispute and Ms. Karimova does dispute it. The problems identified by Ms. Karimova would apply only to women in Azerbaijan and not Georgia, where the consulate is located and where, presumably, the vast majority of visa applicants reside. There is no statement in the pleadings, nor evidence in the record, that any other women from Azerbaijan are waiting for visas before the U.S. Embassy in Georgia and Ms. Karimova disputes that any are (and even if they were, she denies any of them were interviewed before her, and thus are relevant to this matter).[4]

---

[4] The gravamen of Ms, Karimova's complaint is that because, on information and belief, visa applicants interviewed **after** her have been issued or finally denied, visas, thus showing that the consulate is not complying with the First-In First Out rule, or any other apparent rule of reason, Amended Complaint at ¶¶ 33, 36, 39, JA031, therefore only the existence of similarly prejudiced Azeri visa applicants who were interviewed **before** her would support any claim that the other visa applicants face
***Continued in the footer of the next page***.

A court should not take judicial notice of some purported "fact" without a scintilla of evidence. *United States v. Groner*, 475 F.2d 550, 557 (5th Cir. 1972). Since there is not a scintilla of evidence that many others who were interviewed before Ms. Karimova face similarly difficult circumstances as they await adjudication of their visa, this "fact" is indeed subject to reasonable dispute, and so the court erred in taking judicial notice of it. Further, it certainly is not "generally known within the trial court's territorial jurisdiction". Ms. Karimova disputes that there is anyone in the court's territorial jurisdiction who knows anything about whether many others face similarly difficult circumstances to Ms. Karimova as they await adjudication of their visa applications in Georgia. Nor can it be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. If it were, one would expect the court below or at least the government here to identify such source. They did not. Therefore the lower court's holding on this point cannot be justified as based upon judicial notice, and so is in error because the purported facts upon which it is based, or even could be based, do not appear in the pleadings.

The government then claims that the court below held that "Ms. Karimova also has not sufficiently shown that her health and welfare is at

similar problems to Ms. Karimova. The fact that visa applicants interviewed **after** Ms. Karimova might face problems similar to hers is irrelevant, since in a First-In First-Out system a final decision should be reached on Ms. Karimova's application even if those interviewed after her face problems similar to her own.

risk by the delay," Appellee Br. at 28. But the lower court did not so hold. Rather, it merely commented that other visa applicants may face similar problems without disputing that these circumstance affected Ms. Karimova's health or welfare. Mem. at 13, JA103. Many people also suffer from cancer. That hardly changes the fact that it adversely affects the health or welfare of each person so suffering. And, again, the claim that other visa applicants are suffering the same problems as Ms. Karimova is justified neither by the pleadings, nor the record, nor (proper) judicial notice. Accordingly, the district court's conclusion that "[a]n order compelling Defendants to process Plaintiff Karimova's visa application would merely move her application ahead of other visa petitioners in lieu of other visa applicants who may be facing similar, or even worse, circumstances", *Id.*, should be reversed.[5]

**A.** The district court acted prematurely.

Although the government claims that "[t]here is no basis for Ms. Karimova's claim that the district court acted 'prematurely' by dismissing the amended complaint based on a motion to dismiss.", Appellant Br. at 28, in fact it fails entirely to distinguish *Gonzalez v.*

---

[5] Again, the critical point which both the lower court and government repeatedly evade, is that under a proper rule of reason, such as the First In First Out method (neither the lower court nor the government have even suggested the existence of an alternative) Ms. Karimova's visa application should necessarily be brought to a conclusion ahead of visa applicants interviewed after her, even if the health and welfare is as adversely affected by the delays as her own.

*Cuccinelli*, 985 F.3d 357 (4th Cir. 2020) in which the court found a dismissal to be premature, even though this action presents a far weaker case for dismissal than *Gonzalez*.

The government begins by complaining that the fact that Ms. Karimova pointed out that the government did not even claim that her visa application was processed on a First-In First-Out basis was "an improper attempt to shift the burden onto the government." Appellees' Br. at 29. However, Ms. Karimova is not attempting to do anything except to demonstrate that this is an even weaker case for dismissal than the one reversed in *Gonzalez*. There the court  reversed the lower court's holding in *Gonzalez v. Cissna*, 364 F. Supp. 3d 579 (EDNC, 2019) that  "USCIS's processing of first-filed petitions before later-filed petitions, with a select few petitions being expedited subject to criteria set forth by  the agency, constitutes a "rule of reason" under the first *TRAC* factor" *id*. at 585, because "[w]hile a 'first in, first out' approach with enumerated exceptions may be a rule of reason, we do not know enough about how the agency implements its rules and exceptions." *Gonzalez*, 985 F.3d at 375.

Here however, although the district court expressly acknowledged that an inquiry into whether an agency was complying with the rule of reason "begins and ends with Defendants' consistent application of the

'first-in, first-out' methodology'", Mem. at 11, JA101, the consul didn't even claim that it was in fact doing so, which makes this a much weaker case for crediting the consul with consistent application of the first-in, first-out methodology than was the reversed finding on that issue by the court in *Cissna*. Instead, rather than making any inquiry into whether the consul even operated under the First-In First-Out methodology at all, what its exceptions were and how the consul implements its rules and exception, the district court here simply leaped to the conclusion that the consul was following the first-in first out methodology merely because less than five years had passed since Ms. Karimova's interview. Mem. at 12, JA102.

Granted, it is possible that the point that the lower court was trying to make was that Ms. Karimova could not claim that her case was unreasonably delayed merely because it had been pending for a certain period of time. But if that is the case, then it demonstrates that the court below entirely misunderstood her. Ms. Karimova never argued that her case had been unreasonably delayed because it had been more than 3 (now more than 4) years since her interview. Her point was quite simply that it was apparent that the consul in Tblisi was not operating according to a rule of reason, since it was implausible that no one interviewed since her had been issued or finally denied a visa, and that, if any did, that would show that it was not operating according to the

First-In First-Out methodology, or any other rule of reason. Am. Complaint ¶36, JA031. But since only the consulate would have such information, she naturally pled it upon information and belief. *Id.*

The government nevertheless argues that Ms. Karimova improperly pled facts upon information and belief because "the facts underlying Ms. Karimova's allegations 'upon information and belief' are not exclusively in the government's control—e.g., the State Department regularly publishes data on its visa processing. See State Dep't, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics.html (Last checked Jan. 25, 2024)." Appellees' Br. at 33. But the government fails to explain where on that website – or anywhere else- it can be shown whether noncitizens who were interviewed after Ms. Karimova were issued or finally refused a visa[6]. But if it does show that there are noncitizens who were interviewed after appellant and were issued or finally refused a visa, this Court should take judicial notice of it. *See Akhmetshin v. Browder*, 993 F.3d 922, 955 n.3 (D.C. Cir. 2021). This will reinforce the fact that Ms. Karimova established that TRAC Factor #1, rule of reason, tips sharply in her favor. Since this is the most important factor, Mem. at 10, JA100, quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), it demonstrates

---

[6] Nor does it show when this website was first posted, nor assumed its present form. For all we know it could have been on the day before the government accessed it.

again that Ms. Karimova's case is stronger than that of the plaintiffs in *Gonzalez*.

Further, the government is simply wrong when it claims that "Ms. Karimova does not explain how (*Gonzalez*) has any bearing on the timing of a decision or the district court's decision being premature." Appellee Br. at 30. Ms. Karimova demonstrated how *Gonzalez* is distinguishable from the instant matter only in that here the dismissal below is even less defensible. Appellant's Br. at 16-17. Accordingly, as in *Gonzalez*, the district court's order here should be reversed.

The government's other attempts to distinguish *Gonzalez* also fail. While it claims that Ms. Karimova did not sufficiently plead the TRAC factors, she most certainly did. As demonstrated in her opening brief, Appellant's Br. at 19-20, Ms. Karimova's complaint established that the consul was not operating upon the basis of the First-In, First-Out methodology, regarding which the court below proclaimed "the inquiry begins and ends with Defendants' consistent application of the "first-in, first-out" methodology". Mem at 11, J.A. ___. Accordingly, TRAC Factor #1, the "" "most important', Mem. at 10, JA100, favors Ms. Karimova.

Furthermore, although the lower court found that "[b]ecause Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, TRAC factor two is inapplicable", Mem. at 10, JA100, it

entirely neglects the fact that this Court has held that if it "were to read (a) statute not as specifying an express 'timetable' for decision, but as merely providing an 'indication of the speed with which [Congress] expects the agency to proceed,'" *In re UMW Int'l Union*, 190 F.3d 545, 551 (D.C. Cir, 1999), it would still be clear that the consul has transgressed congressional expectations. And, in fact, numerous courts of this district have held TRAC Factor #2 to favor noncitizens complaining of immigration agency delays, precisely because 8 U.S.C. § 1571 provides a sense of Congress that requests for immigration benefits should be concluded in 180 days or less. *See, e.g., Thakker v. Renaud*, 2021 U.S. Dist. LEXIS 53326, 2021 WL 1092269, at *6 (D.C.D.); *Uranga v. United States Citizenship & Immigration Servs.*, 490 F. Supp. 3d 86, 103 (2020); *Telles v. Mayorkas*, No. 21-395, 2022 U.S. Dist. LEXIS 123319, 2022 WL 2713349, at *4. *Krihely v. Mayorkas*, 2023 U.S. Dist. LEXIS 169830, *15, 2023 WL 6215360.

Furthermore, TRAC factors 3 & 5 also tip towards Ms. Karimova. Although the government wrongly claims that Ms. Karimova abandoned the argument that Factor #3 tips in her favor, in fact she did assert that claim when she stated that "[f]urther, the court below did not dispute that Ms. Karimova's health and welfare was endangered by 'intensive fighting involving Azerbaijan, Armenia, and Armenia-supported

separatists,' as well as by the fact that 'as a woman in Azerbaijan, Ms. Karimova suffers from systemic discrimination'. Mem. at 12-13, JA102." Appellant's Br. at 17. At the very least, this constitutes raising the argument by implication. *See Mason v. Shinseki*, 2013 U.S. App. Vet. Claims LEXIS 239, *6.

Finally, *Gonzalez* is in no way irreconcilable with any decision of this Court cited by the government. The government fails to point to anywhere in either *Immigr. Inv. Program Off.*, 80 F.4th 330, 340, 346 (D.C. Cir. 2023) *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd,* 80 F.4th at 346 where it is stated that this Court can never hold that a 12(b)(6) dismissal is premature or that it should never respond to such a decision by remanding the matter back to the district court for discovery.

In fact, *Da Costa* demonstrates vividly what the record should show for a motion to dismiss a claim of unreasonable agency delay to be upheld. In *Da Costa* the plaintiffs claimed amount of time they ha[d] been waiting is *per se* unreasonable. *Id.* at 14. But Ms. Karimova made no such argument here. Rather, she stated that the fact that the consul apparently has made final decisions to grant or refuse the applications of noncitizens who were interviewed after her establishes that the

consul was not operating according to a First-In First-Out rule, or any other rule of reason, and so the most important TRAC factor favors her.

Further, here the government hasn't even claimed it has a rule of reason. Nor did the court find that it had one. It merely found that the time Ms. Karimova's visa application was pending was per se reasonable because it was less than 5 years. The lower court actually decided the case based upon the precise falsity the government baselessly accused Ms. Karimova of.

But even more importantly, the USCIS actually offered a lengthy rationale for its delays in *Da Costa* –the discussion of which took up 824 words of the Court's opinion. *Id.* at 336-338. By contrast, the court below's discussion of the government's explanation for the delay contains exactly zero words, since there was no such explanation. In fact, the only explanation even suggested came solely from the court and not the government, which did not even mention Covid-19 in connection with Ms. Karimova's claims.

**B.** The district court failed to properly consider all the allegations in the amended complaint and grant the appropriate inferences to Ms. Karimova.

The government claims that "[t]he district court correctly found Ms. Karimova's operative complaint did not plead facts suggesting that

the State Department had departed from its typical administrative processes in handling her application", Appellee Br. at 32. However, the Court made no such finding. It merely found that the delay in her case was not unreasonable because "her application was refused just over three years ago,." Mem. at 12, JA102. Further, the facts Ms. Karimova pled showed that the consul either didn't follow the First-In First Out methodology in general or it didn't follow it in her case and, accordingly, didn't comply with the rule of reason. Am. Compl. ¶¶ 33, 36 & 39, JA031. Further, the pleaded fact that the consul issued final decisions to noncitizens who interviewed after Ms. Karimova is sufficiently clear evidence that it did not comply with a rule of reason in adjudicating her visa to overcome any presumption of regularity on the consul's part[7].

Accordingly, Ms. Karimova  pled sufficient specific facts that the district court and  this Court could and should  accept as true and would support the conclusion that the government is not applying a rule of reason as to the handling of her application at this stage. To the extent that the Court failed to credit those facts and the reasonable inferences

---

[7] In fact, there is no reason why the presumption of regularity should even be relevant here, since the government has not identified any reason why consular officer are *required* to follow a rule of reason in their consideration of visa applications. It merely is an adverse TRAC factor if they do not.

that can be derived from the same, it erred, and nothing the government has argued establishes the contrary.

**C.** The district court improperly relied upon facts not in the pleadings.

As noted above, the government has attempted to justify the lower court's reliance on facts outside the pleadings on the grounds that it was properly taking judicial notice of the same. As shown above, that is simply not the case, and so the government's excuses for the lower court's reliance upon facts not in the pleadings have no merit.

**D.** The district court did not properly consider the *trac* factors in determining that Ms. Karimova has not suffered an unreasonable delay.

As noted above, Ms. Karimova's complaint demonstrates that the First, Second Third and Fifth TRAC factors tip sharply in her favor, and the court below cited nothing to the contrary except the mere fact that Ms. Karimova's interview occurred a little over three years ago, Mem. at 12, JA102, and the entirely speculative assumption that ""many other[][visa applicants at Tblisi] face similarly difficult circumstances as they await adjudication of their visa applications." " Mem. at 13, JA103.

Since there is nothing in the pleadings to overcome any of the facts pled by Ms. Karimova on these points, the court below clearly erred in concluding that Ms. Karimova failed to prevail on any of the TRAC Factors.

## CONCLUSION

The Court should reverse the decision below and remand this action to the district court for further proceedings consistent with this Court's opinion.

Original Filed: February 20, 2024
Final Version Filed: March 8, 2024


/s/*Michael E. Piston*
Michael E. Piston (DC Cir Bar 63186)
Attorney for the Plaintiffs – Appellants

CERTIFICATE OF COMPLIANCE


The foregoing, not including the caption, table of contents or this

certificate, contains 6,486 words.

Respectfully Submitted this 8th day of March, 2024.




/s/MichaelE.Piston

Michael E. Piston (DC Cir Bar 63186)
Attorney for the Plaintiffs - Appellants

38-08 Union Street, Ste 9A
Flushing, NY 11354

646-876-3772

Michaelpiston4@gmail.com

CERTIFICATE OF SERVICE

I certify on this 8th day of March, 2024, that the foregoing has been

served by the Court's CM/ECF system.


/s/ Michael E. Piston

Michael E. Piston
Attorney for the Appellant